IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LORENZO DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 15 CV 7771 |
| ) | |
| The CITY OF CHICAGO, Illinois, a municipal ) | Judge |
| corporation, and Independent Police Review ) | |
| Authority Chief Administrator SCOTT ANDO, ) | Magistrate Judge |
| And First Deputy Chief Administrator STEVEN ) | |
| MITCHELL, ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff LORENZO DAVIS, by his attorneys, The Hamilton Law Office, LLC, makes the following complaint against Defendants CITY OF CHICAGO ("Defendant CITY"), and Independent Police Review Authority Chief Administrator SCOTT ANDO ("Ando") and Independent Police Review Authority First Deputy Chief Administrator STEVEN MITCHELL ("Mitchell"):

### JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. §1983 to address the deprivation, under color of law, of Plaintiff's rights under the United States Constitution and Illinois common and statutory law.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. §§ 1391(b). All of the parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred within this district.

### PARTIES

4. Plaintiff LORENZO DAVIS is a 66-year-old resident of Chicago, Illinois and a former employee of the City of Chicago's Independent Police Review Authority ("IPRA").

5. At all relevant times, Defendant SCOTT M. ANDO was employed by Defendant CITY as the Chief Administrator of IPRA.

6. At all relevant times, Defendant STEVEN MITCHELL was employed by Defendant CITY as the First Deputy Chief Administrator of IPRA and is the second highest-ranking person on the IPRA staff, after ANDO.

7. ANDO and MITCHELL both went to work for IPRA after careers as agents for the federal Drug Enforcement Administration.

8. Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and was at all relevant times, the employer and principal of Defendants ANDO and MITCHELL.

## FACTS

### *The Independent Police Review Authority*

9. According to the City of Chicago's IPRA website, "i[n] 2007, in response to concerns about how allegations of police misconduct were being investigated by the Chicago Police Department, the Independent Police Review Authority (IPRA) was created and approved by the City Council. Headed by a civilian Chief Administrator and staffed entirely with civilian investigators, IPRA is an independent agency of the City of Chicago, separate from the Chicago Police Department. IPRA replaced the former Office of Professional Standards."

10. The City of Chicago's IPRA website describes IPRA as "staffed entirely with civilian investigators" to conduct "independent" investigations.

11. According to the City of Chicago's IPRA website, "[w]hen an allegation of police misconduct involves excessive force, domestic violence, coercion though violence, or verbal bias-based abuse, IPRA conducts the investigation into the allegation and recommends the result. All other allegations are referred to the Internal Affairs Division for appropriate resolution."

12. Also, according to the City of Chicago's IPRA website, "[i]n addition to investigating allegations of misconduct, IPRA investigates or reviews all officer involved shootings, extraordinary occurrences in lock-up, and uses of Tasers."

13. All incidents in which a Chicago police officer shoots a person are investigated by IPRA.

14. IPRA Investigators' duties include "conducting interviews and formal statements with complainants, witnesses, accused and witness officers, and the analysis of all forms of evidence including video, forensic and documentary."

15. During an IPRA investigation, the IPRA investigator documents his investigation by creating reports and memorandum about the evidence and interviews conducted. The IPRA investigator also attempts to gather all documents and other audio or video evidence related to the incident at issue and preserves them in the IPRA file.

16. At the conclusion of their investigations, IPRA Investigators make findings about the misconduct allegations; whether complaints against the officer are "sustained," "not sustained," "exonerated", or "unfounded."

17. If an IPRA Investigator determines that a complaint of police misconduct is "sustained," IPRA then makes a recommendation to the Superintendent of police as to what discipline should be imposed for the officer who committed the misconduct.

18. Allegations of Chicago police officer misconduct, and how those allegations are investigated and resolved, are a matter of great public concern to the people who live in or visit the city of Chicago.

19. Illinois' Freedom of Information Act (FOIA) makes IPRA investigative files and reports available to the public.

20. IPRA investigative file are also subject to discovery in both criminal and civil cases in both federal and state courts.

21. In addition, IPRA investigators are often subpoenaed or otherwise required to testify under oath about their investigations and findings in both civil and criminal cases.

22. According to the City's IPRA website, IPRA's mission is "maintaining the highest level of integrity while conducting objective, thorough investigations, striving to reach a sound and just conclusion….IPRA exists for EVERY member of the community and the members of the Chicago Police Department. Its service is structured to promote cooperative relationships of trust and responsibility between citizens and the police."

23. Finally, it is part of IPRA's mission to report to the public on the findings of its investigators. According to the City's IPRA website, "IPRA provides transparency to the disciplinary process by making public reports on that process."

### *Plaintiff's Employment and Firing from IPRA*

24. Plaintiff served as a sworn Chicago police officer from January 1981 to March 2004. He retired at the rank of Commander.

25. In 2008, Plaintiff was hired by IPRA as an Investigator. In July 2010, he was promoted to Supervisor.

26. Plaintiff, as a resident of the City of a Chicago and a civilian member of the public, had both personal and professional interests in police accountability issues.

27. Defendant ANDO was hired as First Deputy Chief Administrator of IPRA in October 2011, and became Chief Administrator in February 2014.

28. Plaintiff conducted thorough investigations at IPRA. He earned a solid reputation among his colleagues and until his final review, he received good performance reviews.

29. For example, in September 2013, ANDO signed a performance evaluation for Plaintiff that gave him an overall rating of "excellent" and noted that he "completed several complex investigations" and "requires little supervision."

30. Between 2014 and 2015, Defendants ANDO and MITCHELL began ordering Plaintiff to change sustained findings of police misconduct on at least six (6) different cases.

31. Between 2014 and 2015, Defendants ANDO and MITCHELL also began ordering Plaintiff to change the content of his investigative reports to more favorably reflect upon the accused officers' conduct.

32. Upon information and belief, Defendants ANDO and Mitchell have also ordered other IPRA Investigators to change the contents of their investigative reports and change their ultimate findings from sustained to not sustained, unfounded, or exonerated.

33. DEFENDANTS' efforts to change the "sustained" findings or disciplinary recommendations directly contravened IPRA's purpose and policies, violated public policy and also violated other laws and statutes.

34. Defendants ANDO and MITCHELL never interviewed any witnesses or police officers in any of the cases where they demanded that Plaintiff change his findings.

35. Plaintiff refused to change his findings.

36. Plaintiff's investigations into officer-involved shootings, and the results of those investigations, were matters of public concern.

32. By refusing to change his findings and reports, Plaintiff was speaking out not only as an IPRA investigator, but also as a private citizen of the city of Chicago with an interest in fair, impartial and thorough investigations into officer involved shootings. Plaintiff was not only protecting the integrity of his investigations, but he was protecting the public interest and the private interests of himself and his family as residents of the city of Chicago.

33. Defendant ANDO threatened to fire Plaintiff if he did not change the findings and/or disciplinary recommendations.

34. After Plaintiff still refused to change his findings, Defendants ANDO and MITCHELL asked

5

Plaintiff to send them copies of his reports in a Microsoft Word document format, so that they could alter his reports themselves.

35. In ordering these changes, Defendant ANDO and MITCHELL's intent was to make their personal opinions of cases appear as the actual Investigators' findings.

36. In March 2015, Defendant ANDO implemented a new IPRA policy that required ANDO to personally approve all "sustained" findings of misconduct and disciplinary recommendations by Investigators.

37. ANDO's new policy also provided that if an Investigator refused to make changes to their findings or disciplinary recommendations as ordered by Defendant ANDO, the Investigator would be subject to discipline for insubordination.

38. In April 2015, Defendant ANDO again ordered Plaintiff to change his "sustained" findings on a fatal shooting case.

39. As a result of his refusal to change his "sustained" findings of police misconduct and disciplinary recommendations, ANDO fired Plaintiff in July of 2015.

40. After he was fired, Plaintiff spoke with several news reporters about why he was fired.

41. In response, Defendant ANDO made a statement to the news media claiming that Plaintiff's version of the events was false, and that "no person at IPRA has ever been asked to change their findings."

42. Plaintiff's reputation was publicly harmed and his integrity as a public servant was called into question when ANDO falsely accused Plaintiff of lying to the public.

43. Upon information and belief, after Defendant ANDO fired Plaintiff from IPRA, ANDO and MITCHELL ordered other IPRA Investigators to change Plaintiff's sustained findings on at least one other police shooting case.

## COUNT I
(42 U.S.C §1983, First Amendment Retaliation Claim)

44. Each of the preceding paragraphs is re-alleged as if fully restated here.

45. As described above, Plaintiff engaged in activity protected by the First Amendment when he investigated and created official IPRA reports about his investigations into Chicago police officer misconduct.

46. Defendants' attempts to silence Plaintiff and the subsequent termination of Plaintiff's employment deters him and others from exercising their First Amendment rights and duties in investigating and documenting complaints and findings of Chicago police officer misconduct.

47. Plaintiff's First Amendment activity concerning his findings and/or his refusal to change them was a motivating factor in Defendants' decision to terminate his employment.

48. As a direct and proximate result of Defendants' misconduct, Plaintiff suffered damages, which will be proven at trial.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT II
(42 U.S.C. §1983, Fourteenth Amendment Due Process)

49. Each of the preceding paragraphs is re-alleged as if fully restated here.

50. Plaintiff has a liberty and/or property interest in pursuing an occupation of his choice.

51. As more fully described above, the arbitrary and false actions and injurious statements of Defendant ANDO did and will continue to cause Plaintiff to be unable to pursue an occupation in law enforcement or other public service.

52. Defendant ANDO defamed Plaintiff, calling his integrity into question and questioning his fitness to be a fair and impartial investigator. ANDO's public comments further damaged Plaintiff's options for future employment.

53. Plaintiff's termination from IPRA and the subsequent public defamation of his character and honesty by Defendant ANDO caused Plaintiff to suffer damages in violation of his rights to Due Process under the Fourteenth Amendment.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant ANDO in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

**COUNT III**
(Illinois Whistleblower Act)
740 ILCS 174/10 *et seq.*

54. Each of the preceding paragraphs is re-alleged as if fully restated here..

55. As more fully described above, Defendants ANDO and MITCHELL threatened to and did retaliate against Plaintiff for Plaintiff's disclosures and findings of officer misconduct within the Chicago Police Department.

56. As more fully described above, Defendant ANDO created and enforced rules and/or policies preventing Plaintiff and other IPRA employees from disclosing information about police officer misconduct, which violated a State or federal law, rule, or regulation.

57. As more fully described above, Defendant ANDO threatened to and did retaliate against Plaintiff when ANDO terminated Plaintiff's employment for refusing to participate in activities, or follow policies or systems, that would result in a violation of a State or federal rule or regulation.

58. Plaintiff suffered retaliation for disclosing or attempting to disclose a matter of public interest: police misconduct during officer involved shootings.

59. As a result of this retaliation, Plaintiff has suffered damages.

60. Illinois law provides that public entities, such as Defendant CITY is liable for compensatory damages on a tort judgment against its employee who was acting within the scope of his or her employment.

61. At all relevant times, Defendant ANDO and MITCHELL were both agents of Defendant CITY and employees of the Independent Police Review Authority and acting within the scope of this employment.

62. Defendant CITY is thus liable as principal for the torts described above and committed by its agents Defendant ANDO and MITCHELL.

   **WHEREFORE**, Plaintiff prays for a judgment against Defendant CITY in a fair and just amount, sufficient to compensate Plaintiff for his damages, plus reasonable attorneys' fees and any other relief as is just and equitable.

## COUNT IV
(Common Law Retaliatory Discharge)

63. Each of the preceding paragraphs is re-alleged as if fully restated here.

64. As more fully described above, Plaintiff was terminated for his activities investigating reports of police misconduct in contravention of State and Federal public policy.

65. As a result of this retaliatory discharge, Plaintiff suffered damages.

66. Illinois law provides that public entities, such as Defendant CITY, is liable for compensatory damages on a tort judgment against its employee who was acting within the scope of his or her employment.

67. At all relevant times, Defendants were agents of Defendant CITY and employees of the Independent Police Review Authority acting within the scope of their employment.

68. Defendant CITY is thus liable as principal for all torts committed by its agents.

   **WHEREFORE**, Plaintiff prays for a judgment against Defendant CITY in a fair and just

amount, sufficient to compensate Plaintiff for his damages, and any other relief as is just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

LORENZO DAVIS, Plaintiff

By: /s Torreya L. Hamilton
    Attorney for Plaintiffs

HAMILTON LAW OFFICE, LLC
53 West Jackson Blvd., Suite 452
Chicago, Illinois 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney No. 6229397