UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LORENZO DAVIS | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 15 C 7771 |
| The CITY OF CHICAGO, Illinois, a municipal corporation, and Independent Police Review Authority Chief Administrator SCOTT ANDO, And First Deputy Chief Administrator STEVEN MITCHELL, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendants City of Chicago, Scott Ando ("Defendant Ando"), and Steven Mitchell's ("Defendant Mitchell") (collectively, "Defendants") motion to dismiss Plaintiff Lorenzo Davis' ("Davis") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is granted.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Davis' Complaint are accepted as true. The Court draws all reasonable

inferences in favor of Davis. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

The City of Chicago's Independent Police Review Authority ("IPRA") hired Davis in 2008, four years after he retired from the Chicago Police Department. (Dkt.1 at ¶¶ 24-25). The IPRA, "an independent agency of the City of Chicago," conducts "objective, thorough investigations" of alleged police misconduct. (*Id*. at ¶¶ 9, 22). Initially, Davis worked as an IPRA Investigator. (*Id*. at ¶ 25). In 2010, he was promoted to the position of Supervisor. *Id*. As an IPRA Investigator, Davis conducted interviews with "complainants, witnesses, accused and witness officers," reviewed all forms of evidence, and created reports and memoranda based on the interviews he conducted and the evidence he reviewed. (*Id*. at ¶¶ 14-15). At the conclusion of an investigation, Davis provided a finding regarding the alleged police misconduct. (*Id*. ¶ 16). If an IPRA Investigator concludes that an allegation of police misconduct should be "sustained," the IPRA then makes a recommendation to "the Superintendent of police as to what discipline should be imposed." (*Id*. at ¶ 17). The ultimate finding, based on an IPRA investigation, is reported to the public. (*Id*. at ¶ 23).

Defendant Ando served as the First Deputy Chief Administrator of the IPRA before he became the Chief Administrator in February of 2014. (*Id*. at ¶ 27). Davis asserts that he received good performance reviews while he worked for the IPRA until his final review. (*Id*. at ¶ 28). According to Davis, "[b]etween 2014 and 2015,

Defendants Ando and Mitchell began ordering [him] to change sustained findings of police misconduct on at least six (6) different cases." (*Id*. at ¶ 30). Additionally, Davis claims that, during this same time period, Defendants Ando and Mitchell ordered him "to change the content of his investigative reports to more favorably reflect upon the accused officer's conduct." (*Id*. at ¶ 31). Davis alleges that as a result of his refusal to change his findings, Defendant Ando threatened to fire him and/or make disciplinary recommendations. (*Id*. at page 5). Despite these alleged threats, Davis still refused to change his findings. *Id*. Subsequently, Defendants Ando and Mitchell requested that Davis send them copies of his reports in order for them to supposedly make the changes that Davis refused to make. (*Id*. at page 6). Then, in March of 2015, Defendant Ando implemented a new IPRA policy whereby all "'sustained' findings of misconduct and disciplinary recommendations by Investigators" had to be approved by Defendant Ando. *Id*. Additionally, if an Investigator refused to make changes, as requested by Defendant Ando, "the Investigator would be subject to discipline for insubordination." (*Id*. at ¶ 37).

In April of 2015, after this new policy was implemented, Davis claims that Defendant Ando again ordered him "to change is 'sustained' findings on a fatal shooting case." (*Id*. at ¶ 38). Davis again refused to change his findings and a few months later, in July of 2015, Davis was fired. (*Id*. at ¶ 39). Davis asserts that he was fired as a result of his refusal to change his investigatory findings. *Id*. After being fired, Davis "spoke with several news reporters about why he was fired." (*Id*. at ¶ 40).

According to Davis, Defendant Ando responded stating, "[Davis'] version of events was false, and that 'no person at the IPRA has ever been asked to change their findings.'" (*Id*. at ¶ 41). Davis claims that Defendant Ando's statements publically harmed his reputation and his integrity as a public servant, and that these statements amounted to falsely accusing Davis of lying to the public. (*Id*. at ¶ 42). Davis subsequently filed the instant lawsuit alleging that Defendants violated his First Amendment Rights ("Count I") and his Fourteenth Amendment Right to Due Process ("Count II"). Additionally, Davis' Complaint alleges two state law claims: one claim for violation of the Illinois Whistleblower Act, ("Count III"), and one claim for common law retaliatory discharge ("Count IV").

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims must

be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. First Amendment Retaliation Claim

"To establish a claim for retaliation in violation of the First Amendment, a public employee must prove that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). The first step in the analysis requires the Court to determine whether Davis' speech is constitutionally protected. Such an inquiry is "a question of law to be decided by the court." *See Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013); *see also Kubiak v. City of Chi.*, No. 14-3074, 2016 WL 106868, at *3 (7th Cir. Jan. 11, 2016). "For a public employee's speech to be protected under the First Amendment, the employee must establish that she spoke as a citizen on a matter of public concern," *Kubiak*, 2016 WL 106868, at *3 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)), and that "the state's interests as an employer in 'promoting effective and efficient public service'" do not outweigh the employee's interest in

expressing that speech. *See Swetlik*, 738 F.3d at 825. The threshold question is whether or not the employee is speaking as a citizen on a matter of public concern. "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. If, however, an employee is speaking as a citizen on a matter of public concern, then that employee "must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419.

**A. Davis Did Not Speak In His Capacity As A Private Citizen**

Defendants argue that Davis' speech is not entitled to First Amendment protection because "his speech was speech as a government employee, not speech as a citizen." (Dkt. 18 at 2). Davis asserts that the written reports and findings he made as an IPRA Investigator, as well as his verbal refusals to alter his final reports and findings, are constitutionally protected. We agree with Defendants.

"The Supreme Court has held that 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Kubiak*, 2016 WL 106868, at *3 (quoting *Garcetti*, 547 U.S. at 422). However, "[p]ublic employee speech does not lose First Amendment protection because it concerns the subject matter of the employee's job." *Chrzanowski v. Bianchi*, 725 F.3d 734, 738 (7th Cir. 2013). Rather, the employee's statements must be made pursuant to his *official duties* to lose First Amendment

6

protection. "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Kubiak*, 2016 WL 106868, at *3 (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). The determination as to whether an employee is speaking "as a citizen" or whether he is speaking pursuant to his "official duties" as a public employee must precede any analysis of whether the speech is related to a matter of public concern. *See Davis v. Cook Cnty.*, 534 F.3d 650, 653 (7th Cir. 2008).

In the instant matter, as an IPRA Investigator, Davis created reports and memoranda detailing the interviews he conducted and the evidence he reviewed. After gathering and examining the evidence, Davis formed a conclusion regarding the alleged police misconduct. The written reports and findings that Davis claims are protected speech were made as part of his "daily professional activities." *See Garcetti*, 547 U.S. at 422. The written documents that Davis created were exactly what he was employed to do in his capacity as an IPRA Investigator. *See id*. at 421-22; *see also Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511 (7th Cir. 2007) ("Sigsworth's speech was part of the tasks he was employed to perform, he spoke not as a citizen, but as a public employee, and that speech is not entitled to protection by the First Amendment"). Moreover, the written reports and findings, as well as Davis' verbal refusals to alter his reports and findings, were intimately connected to his job as an IPRA Investigator. *See Kubiak*, 2016 WL 106868, at *4; *see also Davis*,

534 F.3d at 653 (finding that a nurses' letters of complaint were intimately connected to her job and therefore not subject to First Amendment protection). Thus, Davis' written reports and findings, as well as his verbal refusals to change such reports and findings, were made pursuant to his official duties as an IPRA Investigator and are not protected under the First Amendment.

Davis' argument that "by refusing to change his findings and reports, [he] was speaking out not only as an IPRA investigator, but also as a private citizen of the city of Chicago," is unpersuasive. (Dkt. 1 at page 5). Although Davis allegedly pursued the IPRA's mission of "maintaining the highest level of integrity while conducting objective, thorough investigations," like his written reports and findings, Davis' verbal refusals were made to his supervisors, pursuant to his "official duties" as an IPRA Investigator, and not as a private citizen. *See Vose v. Kliment*, 506 F.3d 565, 570-71 (7th Cir. 2007) ("It is not the negative or policy-oriented content of the speech that is the focus . . . it is whether the speech was pursuant to his official duties or whether the expression was that of a private citizen"). Accordingly, Davis' statements, both written and verbal, do not constitute speech by a private citizen, but instead are statements by a public employee pursuant to his official duties, and therefore, are not entitled to First Amendment protection.

### B. Davis' Speech Does Not Address A Matter of Public Concern

"The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the

time of publication.'" *Kubiak*, 2016 WL 106868, at *5 (quoting *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004) (per curiam)). "Whether a statement rises to the level of public concern is a question of law, and in answering this question [a court] look[s] to the 'content, form, and context' of the statement." *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). The speaker's motive "is relevant as part of the 'context' in which the speech was made, but 'content remains the most important factor in determining whether the speech addresses a matter of public concern.'" *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 985 (7th Cir. 2013) (quoting *Chaklos*, 560 F.3d at 714). In analyzing the content, form, and context of the statement, a court must consider the "overall objective or point of the speech." *Id*. The question—to be decided by examining the content, form, and context of the statement—is whether the objective of the speech was "to bring wrongdoing to light" or to "further some purely private interest." *Kubiak*, 2016 WL 106868, at *5 (quoting *Kristofek*, 712 F.3d at 985).

In the instant matter, the content of the speech at issue includes findings and conclusions regarding Davis' investigations into alleged police misconduct. The form of the speech included both written statements that Davis submitted to his supervisors, as well as his verbal refusals to alter his written reports and findings. Both the content and the form of the speech provide insight into the context in which this speech occurred. Davis, as a public employee, created reports and findings in his capacity as an IPRA Investigator. In this context, his speech cannot be said to involve matters of

public concern. While the content of his reports and findings may touch on a subject of potential interest to the public, the "overall objective" of the speech as demonstrated by the content, form, and context is consistent with Davis' obligations as an IPRA Investigator. Accordingly, the speech at issue did not involve a matter of public concern.

The Court still must consider Davis' motive because, while not dispositive, it is relevant to the Court's context analysis. *See Kristofek*, 712 F.3d at 985. Davis alleges that his refusals to change his reports and findings were motivated by his concern to ensure that investigations of officers involved in shootings were fair, impartial, and thorough; to maintain the integrity of his investigations; and to protect "the public interest and private interests of himself and his family as residents of the City of Chicago." (Dkt. 1 at page 5). Taking into consideration these motivating factors, the Court still concludes that Davis' speech does not involve a matter of public concern. These alleged motives demonstrate that Davis had a personal and private interest in protecting "himself and his family as residents of the City of Chicago." Furthermore, Davis' speech was limited to internal written and verbal statements, which further supports the conclusion that Davis' speech was motived by personal concerns. *See Kubiak*, 2016 WL 106868, at *6 ("the fact that Kubiak's complaints were all made internally suggests that she was primarily motivated by personal concerns"); *see also Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) ("the fact that the speech was entirely internal does not itself render the speech unprotected[;]" however, it does

10

suggest "that the grievance was personal in nature"); *compare Kristofek*, 712 F.3d at 982-85 (reversing dismissal of claim where plaintiff not only made internal complaints regarding what he perceived to be the unlawful release of a driver from custody "because [the driver's] mother was politically connected," but also consulted an attorney, as well as the FBI). Thus, in considering Davis' motives, the Court is further convinced that in this particular context he was not speaking about a matter of public concern. Based on the content, form, and context of the speech, the allegations in the instant matter do not support a finding that the objective of Davis' speech was "to bring wrongdoing to light;" rather, Davis was pursuing a private interest. Accordingly, the speech at issue does address a matter of public concern.

In the instant matter, although Davis allegedly attempted to correct wrongdoing, he spoke as a public employee. And while exposing government wrongdoing is important, Davis' speech in this particular context did not amount to speech on a matter of public concern. For these reasons, the motion to dismiss Count I is granted with prejudice.

**II. Fourteenth Amendment Due Process Claim**

Davis claims that Defendants deprived him of his liberty and or property interest in pursuing an occupation of his choice when Defendant Ando publically stated that Davis' "version of events was false, and that 'no person at the IPRA has ever been asked to change their findings.'" (Dkt. 1 at ¶¶ 41, 53). Defendants respond that Davis fails to allege facts which demonstrate that Davis experienced a change in

legal status, that Defendant Ando's statements amount to defamation, and that Davis sought future employment "but was turned down as a result of the purportedly stigmatizing statements by Defendant Ando." (Dkt. 18 at 10-12). Again, the Court agrees with Defendants.

The "concept of liberty protected by the due process clause has long included occupational liberty." *Caffarello v. Ill. State Toll Highway Auth.*, No. 13 C 8495, 2014 WL 3559388, at *8 (N.D. Ill. July 17, 2014) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). However, "[i]t is the liberty to pursue a *calling* or *occupation*, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id*. "[M]ere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes 'serious impairment of one's future employment.'" *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (quoting *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)). Instead, it is "the 'alteration in legal status,' such as government deprivation of a right previously held, 'which, combined with the injury resulting from the defamation, [that] justif[ies] the invocation of procedural safeguards.'" *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013) (quoting *Paul v. Davis*, 424 U.S. 693, 708-09 (1976)). Thus, to sustain a Section 1983, Fourteenth Amendment Due Process claim, Davis must establish an injury to his "reputation *along* with a change in legal status." *Hinkle*, 793 F.3d at 768 (quoting *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1015 (7th Cir. 1990) (emphasis added)).

Regarding the first requirement for such a claim—a change in legal status "along with" an injury to reputation—Davis' allegations demonstrate that he experienced no such change in legal status "along with" the statements he now alleges were defamatory. That is because Defendant Ando's allegedly defamatory statements were not made incidental to Davis' firing, but rather, in response to Davis' own public remarks about why he was fired and after that change in legal status had already occurred. (Dkt. 1 at ¶¶ 40-41). As evidenced by his own Complaint, Davis cannot now claim that statements he admittedly provoked after his firing (because they were made "in response" to his own public statements after his firing) were made "along with" his firing. *See* Dkt. 1 at ¶ 41. But in any event, as to the remaining elements of such a claim, this Court cannot reasonably infer that the Defendants are liable for defamation or that as a result of Defendant Ando's statements Davis suffered, or will suffer, a "tangible loss of other employment opportunities." *See Townsend v. Vallas*, 256 F.3d 661, 670-71 (7th Cir. 2001).

Regarding Davis' allegations of defamation, "the preliminary construction of an allegedly defamatory statement is a question of law to be decided by the Court." *Artunduaga v. Univ. of Chi. Med. Ctr.*, No. 12 C 8733, 2013 WL 2151685, at *3 (N.D. Ill. May 16, 2013). Davis asserts that Defendant Ando's statement that "no one at IPRA had ever been asked to change their findings" amounted to Ando "knowingly and falsely" calling Davis a liar. (Dkt. 25 at 9). While this statement may have disputed Davis' version of events, the Court does not view this statement as

"[e]ssentially . . . knowingly and falsely" calling Davis a liar. Moreover, even if this statement, or Ando's statement that Davis' version of events was false, could be construed that way, a single charge of falsehood is insufficient to support a defamation claim under Illinois law. *See Di Giovanni v. Clyde Park Dist.*, No. 84 C 4809, 1986 WL 12596, at *3 (N.D. Ill. Nov. 3, 1986) ("where accusations of lying refer only to criticism of an allegedly dishonest statement in a single instance, Illinois courts have been loathe to conclude that the statement is defamatory"). Thus, Davis fails to establish that Defendant Ando's statements were defamatory. [1]

Equally detrimental to Davis' Due Process claim, the allegations in the Complaint do not support Davis' assertion that Defendant Ando's statements "did and will continue to cause Plaintiff to be unable to pursue an occupation in law enforcement or other public service," and "further damaged Plaintiff's options for future employment." (Dkt. 1 at ¶¶ 51-52). These conclusory allegations fail to establish that Davis "suffered a tangible loss of other employment opportunities as a result of" Defendant Ando's statements. *See Townsend*, 256 F.3d at 670; *see also Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 621-22 (7th Cir. 2012) (plaintiff

---

[1] The same is true of the additional purportedly defamatory statements that Davis references in his response brief. Although in some instances a plaintiff opposing a Rule 12(b)(6) motion to dismiss "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings," *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), the additional statements that Davis now alleges are, at most, criticisms of Davis' reports and findings. While these statements may be negative, Davis fails to demonstrate that they amount to defamation, *see Di Giovanni*, 1986 WL 12596, at *3, or even who the speaker was. *See* Dkt. 25 at 9 (referring to statements by an unknown "IPRA spokesperson certainly speaking at Ando's direction"). Such elaborations wholly fail to substantiate Davis' defamation claim.

failed to establish how defamatory statements would "cause something worse than 'serious impairment' to his future employment"). While "[t]his court recognizes a valid liberty interest when '[an] employee's good name, reputation, honor or integrity [is] called into question in a manner that ma[kes] it *virtually impossible* for the employee to find new employment,'" Davis provides no factual allegations indicating that he sought future employment with any law enforcement agencies or any other offices, agencies, or companies that fall into the broad category of public service and was denied employment. *See Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010) (quoting *Townsend*, 256 F.3d at 670) (emphasis added). Davis fails to demonstrate "that prospective employment opportunities have been foreclosed to him" or that it has been virtually impossible for him to find new employment in the law enforcement or public interest fields due to Defendant Ando's statements. *See Townsend*, 256 F.3d at 670. Essentially, the Court would be required to speculate as to how Defendant Ando's statements will impact Davis' ability to seek future employment, which we are unwilling to do. *See id*. at 671 (noting that requiring an employee to show that he "suffered a tangible loss of other employment opportunities is consistent with the case authority insisting that a liberty interest claim not be unduly speculative. When a plaintiff cannot make such a showing, his liberty interest claim must fail"). Therefore, Davis fails to establish that he has suffered an injury as a result of Defendant Ando's statements. Thus, the motion to dismiss Count II is granted with prejudice.

**III. Supplemental Jurisdiction**

A public employee is not deprived of "First Amendment protection whenever that employee complains of work-related misconduct." *Sigsworth*, 487 F.3d at 511. In fact, "public employers should, 'as a matter of good judgment,' be 'receptive to constructive criticism offered by their employees.'" *Garcetti*, 547 U.S. at 425 (quoting *Connick*, 461 U.S. at 149). Yet, while "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance," *id*. at 425, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id*. at 424. Rather "the powerful network of legislative enactments—such as whistleblower protection laws and labor codes" are available to those who wish to expose wrongdoing and "provide checks on supervisors who would order unlawful or otherwise inappropriate actions." *Id*. at 425-26.

In the instant matter, neither constitutional claim is appropriate. Davis did not speak as a private citizen on a matter of public concern. Furthermore, Defendant Ando's statements in response to Davis' comments to the media do not amount to defamation and there are no factual allegations to support the conclusion that these statements have made it virtually impossible for Davis to find new employment in the law enforcement or public interest fields. Davis' attempt to create constitutional causes of action given the facts of the instant case strain the rights provided and protected by the Constitution. Thus, Count I and Count II are dismissed with

prejudice.  As to the state law claims, the Court declines to exercise supplemental jurisdiction.  28 U.S.C. § 1367(c)(3); *see RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (when all federal claims are dismissed before trial, it is presumed that the court will relinquish supplemental jurisdiction over state law claims).  To the extent that Count III and Count IV are dismissed, that dismissal is without prejudice.  *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532-33 (7th Cir. 2011).

## CONCLUSION

For the aforementioned reasons, Counts I and II of the complaint are dismissed with prejudice and Counts III and IV are dismissed without prejudice.  Judgment will be entered in favor of Defendants.  It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated:  2/10/2016